Upper St. Clair Township, Appellant, *v.* Commonwealth of Pennsylvania, Department of Community Affairs, Appellee.

72

Argued January 7, 1974, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR., did not participate.

*Frank R. Bolte,* with him *Robert N. Hackett* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellant.

*Lawrence Silver,* Deputy Attorney General, with him *David L. Kurtz,* Deputy Attorney General, *Allen Warshaw,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, April 5, 1974:

Upper St. Clair Township, Allegheny County, has appealed from an adjudication of the Secretary of the Department of Community Affairs denying its application for so-called Project 500 Development Funds. The Secretary's adjudication made August 17, 1972, is as follows:

"The application of the Township of Upper St. Clair for Project 500 Development Funds for the Brookside Park Project pursuant to the 'Land and Water Conservation and Reclamation Act,' Act of January 19, 1968, P. L. (1967) 996, 32 P.S. Sec. 5101 et seq., as evidenced by Letter of Intent submitted December 13, 1971, and Part I Application simultaneously submitted, is hereby denied.

"Applicant has failed to persuade the Department of Community Affairs:

"1. That it is not presently engaging in, and does not intend to continue engaging in, exclusionary development policies, that is, zoning and other land-use control practices that effectively preclude construction of dwelling units that could house minority, and low-income and (in some cases) middle-income families, either by direct exclusion or by raising the price of residential development;

"2. That such exclusionary development policies would not adversely affect access by minorities and the poor to the proposed project facilities;

"3. That, in terms of the limited resources presently available, the proposed project would effectively serve the most pressing community needs.

WILLIAM H. WILCOX,
Secretary"

The Township filed exceptions to the adjudication and the Secretary appointed a panel to conduct an evidentiary hearing pursuant to Sections 31 through 33 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. §§1710.31 through 1710.33. The panel, after hearing, produced a report with findings and conclusions to the effect that Upper St. Clair Township is an "exclusive" community and that its zoning ordinance is "exclusionary." It recommended that the Secretary adhere to his previous denial of funds. The Secretary dismissed exceptions filed by the Township, adopted the panel's report and again denied the appellant's application.

The only evidence produced before the panel relevant to the issue of the propriety of the Secretary's third basis for his adjudication—the asserted failure of the Township to persuade the Department "[t]hat in terms of the limited resources presently available, the proposed project would effectively serve the most pressing community needs"—was the following testi-

mony of the Director of the Bureau of Recreation and Conservation of the Department of Community Affairs: "Q. Before the attorney general's opinion came down on January 13, had Upper St. Clair Township gotten its fair share of Project 500, in its predecessor Project 70 funds? A. I would have some difficulty in telling you what a fair share would be. Let me assume that a fair share would be something on the order of one man, $1.00. Q. Proportional figure. A. The department has provided considerable assistance in the past to Upper St. Clair Township. As an example, the department has assisted some 13 municipalities in the county, under this program, in the past five years. Upper St. Clair Township has received assistance on approximately six projects. They would be fourth in line, as far as the amount of funds. They have received approximately $325,000 from the Commonwealth to date. This would, in summary, to me this would [sic], in my experience, mean that Upper St. Clair Township has very definitely received at least their fair share, if not more of the advantages of this Commonwealth program. CHAIRMAN CAVANAUGH: I am sorry, did you say there were 115 projects funded by the state? THE WITNESS: There have been 13 projects in Allegheny County—I beg your pardon, there have been 13 municipalities within Allegheny County that have received assistance. Upper St. Clair Township is one of those, and is in the top bracket of those municipalities, as far as the amount of funds that they have received; fourth in order. CHAIRMAN CAVANAUGH: Fourth in order, within the county? THE WITNESS: Within the county." There was no evidence of the amount of money available to the Department when Upper St. Clair's application was made, or of the amount fairly allocable to Allegheny County, or of the amount actually allocated to Allegheny County, or of what municipalities of Allegheny County other than Upper St. Clair had made

applications for funds or of the amount applied for by others. There was no proof that the resources available to the Department were limited and no showing as to the extent and nature of demands more pressing than the appellant's. The ineluctable conclusion is that the Secretary's third ground was make-weight and that the central purpose of his action in this case was to assume, and hopefully have confirmed, the power to exclude from the benefits of Project 500, municipalities which in his view are wealthy and which have zoning regulations which, again in his view, are intended to exclude so-called low income persons and members of minorities from the municipality. This is further evidenced by the fact that the Secretary declared Upper St. Clair ineligible for funds, not that its application should be deferred to the demands of others more worthy.

The Secretary denied the Township's application because it had not persuaded him that it was not engaging in "exclusionary development policies" and "[t]hat such exclusionary development policies would not adversely affect access by minorities and the poor" to the Township park. Counsel for the Department at argument before the panel and in our court conceded that the Township's zoning ordinance is not unconstitutionally exclusionary—that it does not offend the standards of *Concord Township Appeal,* 439 Pa. 466, 268 A. 2d 765 (1970) ; *Girsh Appeal,* 437 Pa. 237, 263 A. 2d 395 (1970) ; and *National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A. 2d 597 (1965). Indeed it does not. The minimum lot size in the largest residential district is fixed at 13,000 square feet with public water and 26,000 square feet without public water.[1] The ordinance

---

[1] In a very small residential district there is a 40,000 square foot minimum requirement.

provides for multiple housing at 10 dwelling units per acre and the small area in which such use was originally permitted has been enlarged by zoning amendments from time to time to accommodate particular projects, including a home for the aged. No activity by the Township other than zoning is mentioned as an exclusionary development policy.[2] The Department's evidence at the panel's hearing tended to show that most people who reside in Upper St. Clair Township are not members of minorities, that their average incomes are higher than the average of the general population and that some lands and dwellings in the Township are sold for substantial prices. There is no evidence that the Township zoning ordinance caused these conditions. To establish a connection, the Department produced a planning expert, a resident of New York State, with some experience in the Philadelphia area, whom it had engaged for the purpose of this case and who gave as his opinion that Upper St. Clair's zoning ordinance *contributed* to the fact that there were few poor and minority residents of the Township. On the other hand, the Township produced a qualified planner, who is also a resident of the Township and Chairman of the Township Planning Commission, who testified as follows: "MR. LONGSTRETH: Do I properly understand that you do not have a record of developers who have attempted to find land and develop it for middle or low income housing [and] have been turned down? THE WITNESS: I can emphatically say, since I have been on that board, we have never had one person come in, even apply, because, see, you can apply on a 10-acre plot on the planned unit development, you can apply. We have never, never had anybody apply to the Planning Com-

---

[2] The Secretary's panel found evidence of exclusionary policy in the fact that the Township did not have an affirmative program to establish subsidized housing.

mission of Upper St. Clair for low cost housing. MR. LONGSTRETH: Is that because they don't want to go there, or is it because— THE WITNNESS: Yes, sir. I told you, we do a lot of low cost housing. [In his own private work as architect and planner]. And, you know, each one of you know where low cost housing goes. It goes where there is transportation, where the people work, and where the land will satisfy the need. Now, then, it is not way out there in Upper St. Clair, where we don't have public—you know, now we do this for a living all the time. This is not a social book thing, we do this all the time."

The record does not support a finding that Upper St. Clair's conditions of being predominantly populated with white people of better than average income and of containing valuable land and improvements are the result of its zoning restrictions rather than other causes, such as its suburban location without public transportation and its attractiveness to persons able to pay substantial prices for homes in the suburbs.

The record is equally deficient in proof that the Township's development policies adversely affect access by minorities and poor to its public parks. The record shows that the Township's parks are available to the general public of the area and are not restricted to Township residents. The *only evidence* concerning their availability to persons from without the immediate area was the Township's showing that some persons from Pittsburgh have occasionally used its athletic facilities.

Apart from the record, however, the Department was bound to show some authority in the Constitution or the statutes for the Secretary's denial to an otherwise qualified municipality[3] of State funds upon the

---

[3] Upper St. Clair's application was approved by the Department staff.

asserted failure of the Township to prove to him that its land development policies, though lawful, did not exclude the poor and minorities. It cites none and we have found none.

Project 500 is not, as its name might imply, an activity of an administrative agency of State government, but a fund of $500,000,000 borrowed by the State to be repaid from the taxes of all of the people of Pennsylvania pursuant to an amendment to the Constitution of Pennsylvania and a statute enacted by the General Assembly.

The constitutional amendment is Article 8, Section 16: "In addition to the purposes stated in article eight, section seven of this Constitution, the Commonwealth may be authorized by law to create a debt and issue bonds in the amount of five hundred million dollars ($500,000,000) for a Land and Water Conservation and Reclamation Fund to be used for the conservation and reclamation of land and water resources of the Commonwealth, including the elimination of acid mine drainage, sewage, and other pollution from the streams of the Commonwealth, the provision of State financial assistance to political subdivisions and municipal authorities of the Commonwealth of Pennsylvania for the construction of sewage treatment plants, the restoration of abandoned strip-mined areas, the control and extinguishment of surface and underground mine fires, the alleviation and prevention of subsidence resulting from mining operations, and *the acquisition of additional lands and the reclamation and development of park and recreational lands* acquired pursuant to the authority of article nine, section twenty-four of this Constitution, subject to such conditions and liabilities as the General Assembly may prescribe." (Emphasis supplied.)

The statute implementing Article 8, Section 16 is The Land and Water Conservation and Reclamation

Act, Act of January 19, 1968, P. L. (1967) 996, 32 P.S. §5101 et seq. This authorizes borrowing to the constitutional limit of $500,000,000 "from time to time . . . as may be found necessary." Section 4(b), 32 P.S. Section 5104(b). Of the total amount authorized to be borrowed, $75,000,000 is allotted by the Act to the Department of Community Affairs "for State grants in aid to political subdivisions to pay up to 50% of the cost" of developing municipal park and recreation lands. Section 16, 32 P.S. §5116(a)(4). The Department of Community Affairs by Section 16(b) V, 32 P.S. §5116, is empowered "to promulgate rules and regulations . . . as necessary in order to properly administer this Act and to determine the recreation and park needs of political subdivisions and the advisability of granting State aid." Section 2, 32 P.S. §5102 of the Land and Water Conservation and Reclamation Act recites the following legislative findings:

"(2) *The rapid growth* of Pennsylvania's urban and *suburban population requires the development of park, recreation and open space lands* so that these public lands may be immediately open, available and used by the citizens of Pennsylvania.

. . . .

"(4) *The Commonwealth of Pennsylvania must act* to develop and to *assist local governments to develop lands that have been acquired for recreation,* conservation and historical use so that the public may have access and enjoyment of these facilities at the earliest possible time." (Emphasis supplied.)

Upper St. Clair Township is revealed by the record to be the very model of a suburban community undergoing a rapid growth of population. Its population increased from about 8,000 to about 15,000 in the decade of 1960-1970. It is estimated that its population will be 27,000 in 1985. The instant application was for assistance in development of land which, with State

aid, had been earlier acquired for recreation. Indeed, the Department does not point to anything in the Act, other than its rule making power, as authority for the Secretary's action. Its brief founds its case on holdings of Federal courts that the 14th Amendment prohibits the use by the State of money or other public facilities to foster segregation or support discrimination.[4] The argument is, apparently, that since the people of Upper St. Clair Township are white and have above average incomes and because it has imposed land use restrictions by means of zoning, the grant to it of State money to provide a park would foster segregation and support discrimination. Assuming the Department's best case—that the Township's zoning ordinance contributes to the fact that few poor or minority persons reside in Upper St. Clair Township—it remains unclear to us how the funding of a public park, admittedly not segregated, encourages discrimination or fosters segregation. On the contrary, the park might introduce such persons to the municipality. The familiar cases cited by the Department do not hold that government funds intended for use in a non-discriminatory fashion must be withheld from a municipality as a form of punishment where the administrator of the fund is not satisfied that the municipality is not discriminating in another activity.

We have heretofore referred to 16(b) V, 32 P.S. §5116, of the Land and Water Conservation Act conferring upon the Department the power to make rules and regulations to properly administer the Act and to

---

[4] *Norwood v. Harrison,*  U.S.  , 41 U.S.L.W. 5094 (1973), state aid to private schools which discriminate on account of race; *Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961) lease by government of property in support of discrimination; *Wright v. Brighton,* 441 F. 2d 447 (5th Cir. 1971) sale of property by government for use in support of discrimination.

determine the park needs of political subdivisions and the advisability of granting State aid. The Department's brief does not seek to justify the Secretary's action in this case by reference to any pertinent rule or regulation; nor could it, because it had promulgated none at the time this matter was adjudicated. The Department had, however, published so-called guidelines which correctly stated that any municipality was eligible for funds under the law. It had also published a so-called Interim Statement which sets forth in very general terms those things which would be considered in determining an applicant's need for the funds. While high population density and low median family income are recited as positive need factors, so also is rapid increase of population. Neither the guideline nor the interim statement contains any indication that a municipality might be declared ineligible for inability to prove to the Secretary that it is not engaged in exclusionary land development activities. Since this case was before the Secretary, the Department has caused notice of proposed rule making to be published in the Pennsylvania Bulletin. Included is the Department's declaration that municipalities engaging in "exclusionary development practices may be found ineligible" and that "[i]n such situations, applications will not be approved until the Department is assured that actions which eliminate exclusionary development practices . . . have been initiated. The Department will provide technical assistance in eliminating exclusionary development practices on request." Exclusionary development practices are defined as "[z]oning and other land use control practices that effectively preclude construction of dwelling units that could house minority, low income and, in some cases, middle income families, either by direct exclusion or by raising the price of residential development." We are not required to decide whether these rules are within the power granted

to the Department to make rules to assist in the determination of the advisability of granting State aid, because the Department does not argue that they have effect in this case. The proposed rules suggest, however, the question for future determination of whether the Legislature by empowering an agency to make rules helpful in determining the advisability of granting State funds to municipalities for a purpose not directly related to land development, intended to confer upon the agency the power by regulation to deny such funds to municipalities which, pursuant to express delegation by the Legislature[5] have enacted zoning ordinances, on the ground that such ordinances, although legally valid, do not conform to the agency's definition of what is exclusionary.

Finally, we do not hold that the Department lacks power to establish rules and regulations governing the grant of these funds based on the comparative need of applicants for park and recreation facilities or of their comparative need for State aid in developing them.

The Secretary here abused his power and his order may not stand.

### ORDER

AND NOW, this 5th day of April, 1974, the appeal of Upper St. Clair Township is sustained and the Secretary's order is set aside; there appearing to be no impediment to the grant of the Township's application other than those dealt with herein, the record is remanded to the Department for approval of the Township's application.

---

[5] In this case the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, 53 P.S. §10101.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. While I agree with the majority that this record does not support the first two

findings of the Secretary, the record, in my opinion, does support the Secretary's third finding.

We are directed by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 P.S. §1710.44 to affirm the adjudication of an agency ". . . unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence."

Furthermore, the majority would put the burden on the Department of Community Affairs (Department) "to show some authority in the Constitution or the statutes for the Secretary's denial to an otherwise qualified municipality. . . ." As I read the statute, The Land and Water Conservation and Reclamation Act, Act of January 19, 1968, P. L. (1967) 966, §16(b), as amended, 32 P.S. §5116(b), the burden was on the municipality to prove that it met all the requirements, and thereafter it was a matter within the discretion of the Secretary to determine the "advisability of granting State aid." Section 16(b)V reads in pertinent part: "The Department of Community Affairs shall be empowered to promulgate rules and regulations, undertake studies and employ personnel and consultants and provide grants to political subdivisions to undertake studies as necessary in order to properly administer this act and to determine the recreation and park needs of political subdivisions *and the advisability of granting State aid.*" (Emphasis added.)

The statute does not say to me that, like a special exception in a zoning case, once the political subdivision submits an application it is automatically entitled to the funds. If that were the case, then one political

subdivision could submit an application which would utilize the entire State fund available and no other political subdivision would be able to obtain any funds for its needs. Clearly the legislative intent was to place the granting of such funds within the discretion of the Secretary, and an appellate court should only interfere if the record discloses an arbitrary, capricious, unreasonable or unfair refusal. Here, Upper St. Clair Township already has received $325,000, as one of 13 grantees in Allegheny County in the past five years. It cannot now say that it has been treated unfairly.

As I read this record and the applicable law, Upper St. Clair Township has not met its burden of proving an improper abuse of discretion insofar as finding number three is concerned, and therefore, I would affirm the adjudication of the Secretary and dismiss the appeal.