Larwin Multihousing Pennsylvania Corporation, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Larwin Multihousing Pennsylvania Corporation, Appellant, *v.* Pennypack Watershed Association, Appellee.

Argued April 2, 1975, before President JUDGE BOWMAN and JUDGES CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Carl K. Zucker,* with him *Reuben E. Cohen,* and *Cohen, Shapiro, Polisher, Shiekman & Cohen,* for appellant.

*Dennis M. Coyne,* Assistant Attorney General, with him *Robert J. Shusterman,* Assistant Attorney General, for appellee, Commonwealth.

*Robert J. Sugarman,* with him *John E. Flaherty, Jr.,* and, of counsel, *Dechert, Price & Rhoads,* for appellee, Pennypack.

OPINION BY JUDGE ROGERS, May 23, 1975:

Larwin Multihousing Pennsylvania Corporation (Larwin) has appealed from orders of the Court of Common Pleas of Montgomery County, sustaining the appeals of the Commonwealth of Pennsylvania and of the Pennypack Watershed Association from an order of the Zoning

Hearing Board of Abington Township favorable to Larwin's desire to build apartments in Abington Township.

The history of this case in respect of its length, complexity and final confusion is not dissimilar to that which often, if not usually, attends the efforts of developers to obtain permits to build multifamily housing. Such cases evidence the fact that the battleground between those who would build apartments and those who would resist their construction has shifted from the heights of constitutional debate, lost by the latter in *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970), to the beachheads of local administrative procedures. This case also illustrates the importance to persons engaging in zoning litigation of careful attention and adherence to the comprehensive procedural provisions of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10101 et seq.

Certain aspects of this case are, however, unusual. One of Larwin's remaining adversaries is the Commonwealth of Pennsylvania, acting here by its Department of Environmental Resources; although the Commonwealth, acting by other departments, has repeatedly inveighed against the asserted failure of municipal zoning regulations to provide sufficiently for multifamily residential uses. *See e.g., Upper St. Clair Township v. Commonwealth,* 13 Pa. Commonwealth Ct. 71, 317 A.2d 906 (1974) ; *Commonwealth v. Bucks County,* 8 Pa. Commonwealth Ct. 295, 302 A. 2d 897 (1974).[1] Conceding the

1. A similar dichotomy seems to exist with respect to basic fuels. The Department of Transportation argued on September 10, 1973 that coal, instead of oil, should be used by utilities in the generation of electricity *(Bucks County Board of Commissioners v. Pa. P.U.C.,* 11 Pa. Commonwealth Ct. 487, 313 A.2d 185 (1973)). D.E.R. contended on December 3, 1973 that the officers of a utility using coal should be held in contempt for, in essence, failing to convert its generating plant to oil *(Department of Environmental Resources v. Pennsylvania Power Company,* 12 Pa. Commonwealth Ct. 212, 316 A.2d 96 (1974).

desirability of the State's engaging in "public interest" litigation, we may nevertheless entertain the hopeful expectation that the departments and agencies of State government will select for espousal a common favorite from among the conflicting views of the public interest which seem to arise on most issues.

This case is unusual also because it is not the municipality, spurred by objecting residents, which opposes Larwin's proposed development but, in addition to the Commonwealth, a nonprofit corporation organized, as one of its pleadings reveals, "to promote the enjoyment, restoration, conservation, protection and prudent management of the Pennsylvania Creek Watershed . . ., a land area ultimately drained by the Pennypack Creek and its tributaries extending from its source near Maple Glen in Montgomery County to the confluence of the Pennypack with the Delaware River at Philadelphia, which area encompasses parts of Montgomery, Bucks and Philadelphia Counties."

Further, the objectors do not assert that Larwin's plans violate any substantive provision of the Abington Township Zoning Ordinance, any other township regulation, any Act of the General Assembly or any regulation of the Department of Environmental Resources. Their contention is that, despite the conformity of Larwin's plans with all existing requirement of statutory law, the apartment development should be prevented or, in the alternative, subjected to further study, because it may have adverse effects on the environment of the watershed of the Pennypack Creek.

The land in question contains 81.663 acres located adjacent to the boundary line between Abington Township, Montgomery County, and the City of Philadelphia. In March 1969, its then owner, Tri-Pac Development Corporation, applied for and obtained from the Abington Board of Commissioners a change of zoning classification from "V," under which apartments were not a permitted

use, to AP-Planned Apartment, under which they were. The application was made and granted pursuant to Section 1707 of the township zoning ordinance, pertinent portions of which we reproduce:

"Special Procedures for Planned Districts. The following special regulations shall apply in the development of an area designated at the time of application as an AP Planned Apartment-Professional, PB Planned Business, or PI Planned Industrial District, or in the case of a request for amendment to establish such a district.

"1. Application Requirement. The application for a permit to construct a use, or the request for amendment shall be accompanied by a plan or plans for the proposed use of the tract or district which plan or plans, and application or request, shall comply with the requirements of this Ordinance and with the provisions of the Township of Abington Subdivision Ordinance of 1961 as amended to the date of application as though the proposed development were in fact a subdivision. In the case of an amendment to establish a planned district, the Board of Commissioners shall, following review and recommendation by the Planning Commission, determine whether or not the new classification (a) is consistent with the comprehensive plan for Abington and (b) promotes the desirable, harmonious and orderly development of the immediate area and the Township in general.

"2. Plant Requirement . . .

"[This subsection describes those things which must be shown on the plan referred to in subsection (1)].

"3. Compliance with Plan. Following the issuance of a permit or permits for construction in accordance with approved plans, no change, deviation or alteration shall thereafter be permitted except when authorized by the Board of Adjustment, following review and recommendation by the Planning Com-

mission, and upon written application, which application shall be in the nature of an original application for a permit. In no case shall a use be permitted which is not permitted in the district."

Tri-Pac's plan, filed with its petition to amend the zoning map, proposed the construction of a number of two-story, garden type structures containing 348 apartment units and four nine-story buildings containing 540 units. The total of 888 proposed units was less than the number of units allowed on a parcel of 81.663 acres by the regulations of the AP-Apartment district.[2] Eight hundred and twenty of a total of 1554 parking spaces were to be located underground at the sites of the four nine-story buildings.

Tri-Pac did not immediately apply for a building permit. After the zoning change, Tri-Pac submitted to the township three sets of revised plans, one dated February 9, 1971, another dated September 12, 1971 and a third dated October 14, 1971. Certainly the plans dated September 12, 1971 and October 14, 1971, and possibly that dated February 9, 1971, differed from the 1969 plan, principally in the elimination by the former of the four nine-story buildings and underground parking and the substitution of additional garden type dwellings, with all parking aboveground. The total number of units proposed remained the same under the revised plans and ground coverage was increased only from 6.8% to 9.5%. All of the revisions complied with the requirements of the AP-Planned Apartment provisions of the zoning ordinance.

On April 20, 1972 the township issued to Tri-Pac Development Corporation a building permit for the construction of 302 units and 527 parking spaces, designated phase I of the revised plan dated either September 12

---

2. Colloquy at the Zoning Board Hearing suggests that as many as 1500 units were allowed by the zoning ordinance.

or October 14, 1971. There is no evidence and, indeed no charge made, that the actions of Tri-Pac or the competent township authorities in seeking or issuing this permit, for which Tri-Pac paid a fee in excess of $15,000 and under which it commenced work on the ground, were taken with the knowledge or purpose of evading the township's regulations, by improper means or prurient motive. The action of the township in issuing the permit was, however, appealed to the Board of Adjustment by two individuals and the Lower Huntingdon Valley Association, a community organization. This litigation, in which the township was a party and an active participant, was terminated in the Court of Common Pleas of Montgomery County by consent decree based on a written agreement executed by the parties. The decree directed Tri-Pac to modify its plan for phase I[3] in two respects and to produce a restrictive building covenant; the objectors were ordered to withdraw their appeals from the grant of the permit; the township was forbidden to rezone the land except upon application of Tri-Pac or its successors in title; and the record was remanded to the Abington Township Zoning Hearing Board for approval of the "amended plan" pursuant to Section 1707 (3) of the zoning ordinance.

The Zoning Hearing Board conducted a hearing on September 26, 1972. On this occasion, the appellees here, the Commonwealth, by its Department of Environment Resources, and the Pennypack Watershed Association, appeared for the first time as objectors. The assistant attorney general representing the Commonwealth was unprepared to present evidence and asked for a continu-

---

3. By eliminating therefrom two buildings containing a total of 30 units, proposed to be located 310 feet from Pennypack Creek, and providing that no building should be located closer than 400 feet to Pennypack Creek. Apparently buildings could, under the zoning regulations, have been placed as close as 100 feet. The tract is served by public sewer and water facilities.

ance during which he proposed that the Department would make environmental studies and report at a later date. The Pennypack Watershed Association adduced the admittedly inconclusive testinmony of its executive director, describing the types of soil at the site and suggesting that the development as proposed might have undesirable environmental effects by reason, principally, of surface water runoff. It too wanted additional time to prepare ecological studies of the proposal.[4] The Zoning Hearing Board denied the motions to continue and by report made October 12, 1972 approved plans substantially similar to those upon which the building permit for phase I had been issued, as further revised as directed by the consent decree hereinbefore mentioned.[5] The Commonwealth and Pennypack Watershed Association appealed. Both asserted that the plans approved inadequately provided for preservation of the environment; neither questioned the power or authority of the Zoning Hearing Board to hear and decide the case.[6] Larwin, which had acquired Tri-Pac's interest in the development, intervened in December 1972. By order, without opinion, made July 13, 1973, the court below remanded the record to the Zoning Hearing Board with direction that the plan be submitted to the Abington Township Board of Commissioners "for consideration in accordance with the

4. As appears by correspondence in the record, Pennypack Watershed Association knew of the proposal as early as August 1, 1972. Colloquy at the hearing suggests that an employe of D.E.R. sought and obtained from the township information concerning the project six or seven weeks before September 26, 1972. The assistant attorney general who appeared at the hearing was apparently unaware of this fact.

5. The township planning commission had approved the revised plan on September 26, 1972.

6. See Section 1008(1) of the MPC, 53 P.S. §11008(1) requiring that zoning appeal notices must state the grounds of appeal.

provisions of Section 1707 of the Zoning Ordinance of the Township of Abington."

Larwin appealed the lower court's order to this court and we issued our writ of certiorari on August 15, 1973. The lower court's opinion was not filed until October 10, 1974, and the appeal was therefore not argued in this court until April 2, 1975.

At the Zoning Hearing Board hearing on September 26, 1972, Tri-Pac took the position that the Board's duty was to approve or disapprove only the revision of the revised plan of September 12, 1971 ordered by the consent decree, that is, the elimination of two buildings; the township, by its solicitor, contended that the Board's function was to approve or disapprove all revisions of the plan submitted to the Commissioners in 1969, as well as the revision by elimination of the two buildings ordered by the consent decree; and the appellees, the Commonwealth and Pennypack Watershed Association, merely wanted time to make studies which they believed would demonstrate the general undesirability of the revised plan. No one contended that the Zoning Hearing Board was not the proper forum for authorizing changes in plans submitted to the Board of Commissioners with an application for rezoning in 1969.

The lower court compared the plan submitted in 1969 with the revision which was before the Zoning Hearing Board on September 26, 1972 and decided that the latter was substantially different. It construed Section 1707 as requiring that substantial changes in plans submitted with a request for rezoning be approved by the Board of Commisioners and that only minor changes might be approved by the Zoning Hearing Board. We have difficulty with this interpretation. The ordinance makes no distinction between substantial and minor changes; it is silent on which body, if either, should approve changes in plans made before a building permit issues; and it provides that "[f]ollowing the issuance of a permit or permits for

construction in accordance with approved plans, no change, deviation or alteration shall thereafter be permitted except when authorized by the [Zoning Hearing Board]." We view the ordinance as providing that the determination of the body which must authorize changes is dependent upon whether the changes are proposed before or after the issuance of a permit or permits for construction in accordance with approved plans. If the changes are proposed before the issuance of such a permit or permits the approval of the Board of Commissioners would seem to be implied, although not explicitly stated. First, the requirement of the submission of plans with the request for amendment would be of no utility if the developer could make revisions and receive permits without reference to the Board of Commissioners. The provision restricts the Zoning Hearing Board's jurisdiction to cases where the change is made after the issuance of a permit or permits to construct in accordance with an approved plan. In cases where there has never been a permit issued this must mean the plans submitted to the Board of Commissioners with the application for the zoning amendment. While there can be no doubt that the township Commissioners had no objection to the revisions of 1969 plan,[7] there is no evidence that, as a Board, they ever considered or approved any changes. *See School District of Philadelphia v. Framlau Corporation,* 15 Pa. Commonwealth Ct. 621, 328 A.2d 866 (1974).

An examination of the several plans in the record reveals that at least two of the originally proposed nine-

------

7. The building permit which was issued, not by the Building Inspector provided for in the ordinance, but by an assistant township secretary, states that it was submitted to the Board of Commissioners; in the litigation over the permit, the township agreed that the permit should stand and that the Zoning Hearing Board should authorize changes; and the township appeared at the Zoning Hearing Board hearing and declared that body's power to authorize such changes.

story buildings were located within the area of phase I of revised plans for which the permit was issued. There having been no formal approval by the Board of Commissioners of any change of the 1969 plans, we are therefore compelled to conclude that the permit was not issued for construction in accordance with approved plans and that the Zoning Hearing Board was not authorized to approve any changes. Hence, we agree with the court below that the Board of Commissioners should have acted upon all revisions of the 1969 plans.[8]

This brings us to the outstanding building permit as modified by the consent decree made September 21, 1972. *The permit is not under attack in these proceedings.* Neither the Commonwealth nor the Pennypack Watershed Association appealed from the issuance of the permit, and it seems highly unlikely that they could now appeal from its issuance as they could have done when they became aware of its issuance sometime before September 26, 1972. Section 915 of the MPC, 53 P.S. §10915 provides that "[n]o person shall be allowed to file any proceeding with the board later than thirty days after an application for development ... has been approved ... unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given." *See Calabrese v. Zoning Board of Adjustment,* 5 Pa. Commonwealth Ct. 444, 291 A.2d 326 (1972). Further, should the Board of Commissioners experience a change of mind and seek to revoke the permit, despite its agreement in litigation confirmed by consent decree that the permit should not be disturbed,

---

8. The lower court's opinion is unclear as to whether it believed that the Board of Commisioners' consideration should occur at a meeting of the Board of Commisioners or after a hearing conducted as provided by the MPC for zoning amendments. Since the ordinance or map was amended in 1969, we believe and hold that ordinance requires only action at an official meeting of the Board of Commissioners.

it seems unlikely that it could validly do so. *Al Monzo Construction Co. v. Monroeville Borough*, 5 Pa. Commonwealth Ct. 97, 289 A.2d 496 (1972).

Hence, while the Board of Commissioners may review the revisions, any action it may take with regard to the plans for the development of the area included in the phase I can have no effect upon Larwin's entitlement to develop that area so long as it holds the permit. As for the balance of the tract, it will be the Board of Commissioners' duty to review, approve, suggest modifications of or disapprove the changes effected by the revisions.

We believe the court below properly dismissed Larwin's motions to quash on grounds of lack of standing, estoppel and constitutional infirmity. While the subject is moot, we note that in our opinion the Zoning Hearing Board correctly refused the Commonwealth's and the Pennypack Watershed Association's applications for a continuance. There is unquestionably a need for multifamily housing in the Philadelphia area—a need recognized by the Abington Township Commissioners when they rezoned this tract more than six years ago. Larwin and its predecessor have been attempting since that time to construct apartments wholly in accordance with every published construction standard of the township and State governments intended for the preservation of health, safety and the environment. We hope and expect that the Board of Commissioners will act promptly and reasonably in their further consideration of the revised plans and that the Commonwealth and Pennypack Watershed Association, having been provided by this lamentable litigation with almost three years in which to study the matter, will be able to inform the Commissioners precisely why the changes proposed by the revision of the 1969 plan threaten the natural resources of the Commonwealth.[9]

---

9. From the record, we gather that the appellees contend that the revised plan, and probably the 1969 plan, offend in some

The Order of the court below is affirmed and the record remanded with direction that the plans dated October 14, 1971, as modified by the consent decree of September 21, 1972, be returned to the Board of Commissioners for its action in accordance with this opinion.

---

fashion they were not able to describe on September 26, 1972, Article I, Section 27 of the Pennsylvania Constitution declaring the people's right to the preservation of the natural, scenic, historical and esthetic values of the environment and that the public natural resources are the common property of all the people. It is difficult to understand what protections are afforded by the Constitutional provision not already supplied by the township zoning ordinance and the comprehensive statutes of the Commonwealth concerning streams, air pollution and sewage disposal.