United States Tobacco Company, Appellant, *v.*
Commonwealth of Pennsylvania, Appellee.

212

Argued September 8, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Frank A. Sinon*, with him *Robert L. Weldon, Sherill T. Moyer* and *Rhoads, Sinon & Reader,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Vincent J. Dopko,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., December 5, 1975:

Presently before us is a de novo appeal from a decision and order of the Board of Finance and Revenue sustaining the settlement and order of the Resettlement Board[1] imposing the Corporation Income Tax[2] upon the

_____

1. The United States Tobacco Company timely filed the combined corporate tax report for the year ending December 31, 1971, wherein there was reported a Franchise Tax due the Commonwealth in the amount of $11,934, and a Corporate Net Income Tax due the Commonwealth in the amount of $69,794, and no Corporate

United States Tobacco Company (Appellant) for its reporting period ending December 31, 1971. For the reasons hereinafter stated we affirm.

Appellant is a New Jersey corporation engaged in the manufacture and sale of tobacco products sold exclusively in interstate commerce and in part to Pennsylvania customers. No company manufacturing plants are maintained in Pennsylvania, and no offices, bank accounts, company records or corporate meetings are within the Commonwealth. Appellant's sole relevant contact with Pennsylvania, for the taxable period in question, was through so-called *missionary representatives* whose function is dispositive of the question of sufficient nexus for imposition of this tax.

Appellant's attack upon the settlement is framed as follows:

1. The imposition of Corporation Income Tax against Appellant, a corporation engaged solely in interstate commerce activities within Pennsylvania, *premised upon the sales solicitation activities of its missionary representatives* is violative of Act of September 14, 1959, 15 U.S.C. §381 et seq. and the Commerce and Due Process Clauses of the United States Constitution.

---

Loans Tax. On February 21, 1974, a settlement was mailed to the Defendant wherein the Commonwealth settled the Corporation Income Tax in the amount of $70,878.52 against the Company computed as follows:

| | |
|---|---:|
| Income to be apportioned | $16,442,336.00 |
| Apportionment percentage | .031678 |
| Amount of income apportioned to Pennsylvania | 520,860.32 |
| Pennsylvania Corporation Income Tax | 69,794.00 |
| Total taxable income in Pennsylvania | 590,654.32 |
| Tax at the rate of 12% | 70,878.52 |

2. Article V of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7501 et seq., contains the Corporation Income Tax, hereinafter referred to as the "Code".

2.   The add back of corporation income tax, after apportionment of Appellant's Pennsylvania income tax liability is invalid in that no statutory authority exists for such an add back, in that it results in the taxation of more of a corporation's income than is reasonably related to Pennsylvania activity, in that it discriminates against multistate corporations and it unconstitutionally taxes gross income to the extent of the add back.

### I—NEXUS

Section 502 of the Code, 72 P.S. §7502, which defines imposition of the Corporation Income Tax states:

> "Every corporation carrying on activities within this Commonwealth or owning property in this Commonwealth by or in the name of itself or any person . . . shall be subject to and shall pay a State property tax on taxable income derived from sources within this Commonwealth."

The incidence of this property tax measure falls upon the taxable income derived from sources within the Commonwealth; however, crucial to the imposition of this tax is that the corporation be *carrying on activities* sufficient to establish a nexus enabling constitutional exaction of the tax; or phrased differently, our inquiry must ultimately confront the question of whether the Commonwealth has given anything for which it can ask in return, afforded protections or conferred benefits to establish a sufficient nexus to subject Appellant to taxation. *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450 (1959).

Both the Commonwealth and Appellant have extensively reviewed the unfolding liberalization of the law as it relates to state taxation of foreign corporations with varying degrees of connection with the taxing state. It may be beneficial for the disposition of the instant case to briefly review the law in this somewhat complex area.

Our inquiry begins with *Roy Stone Transfer Corp. v. Messner,* 377 Pa. 234, 103 A.2d 700 (1955), where the

taxpayer, a foreign corporation, engaged exclusively in interstate commerce, having neither tangible or intangible property in Pennsylvania, nor any contracts, orders or solicitation within the Commonwealth, but, having merely the drivers of its trucks present in the state, successfully attacked, as unconstitutional as applied to it, the Corporation Income Tax of 1951. Clearly, the Court believed that at that time no nexus existed which would justify imposition of the tax. However, following *Roy Stone*, our Supreme Court decided *Commonwealth v. Eastman-Kodak Company*, 385 Pa. 607, 124 A.2d 100 (1956), wherein under a similar factual posture, notwithstanding the fact that the taxpayer had employees, using company cars and soliciting business within the Commonwealth, the Court found *Roy Stone* controlling upholding the position of the taxpayer.

Next, *Commonwealth v. United States Tobacco Company*, 70 Dauph. 217 (1957) was decided. There the taxpayer was the self same as in the present action, and that court held that the taxpayer engaging in the same practices, then as now, was doing nothing more than the taxpayer in *Eastman* and, therefore, held U.S. Tobacco Company *not subject* to tax under the Corporation Income Tax Law. Then came the United States Supreme Court's landmark decision in *Northwestern States Portland Cement Co. v. Minnesota, supra.*[3] In *Northwestern States Portland Cement*, the constitutionality of two separate state taxing statutes was in issue. In the first, Minnesota attempted to tax a foreign corporation engaged in the manufacture and sale of cement where the foreign corporation leased an office and staffed it with a manager, two salesmen and a secretary, and where those salesmen used company cars to solicit orders which were subject to acceptance and delivery by the home office. The second case involved a Georgia tax measure imposing a tax upon

3. *Williams v. Stockman Valves & Fittings* was also disposed of under this same caption.

foreign corporations, and was factually similar to the Minnesota case. The Supreme Court there stated, citing from its prior opinion in *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435 (1940):

> "[T]he 'controlling question is whether the state has given anything for which it can ask in return.' Since by the practical operation of [the] tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred . . .' it 'is free to pursue its own fiscal policies, unembarrassed by the Constitution.'" *Northwestern Portland Cement, supra,* 358 U.S. at 465.

By validating the state taxing statutes involved, the Supreme Court immeasurably broadened the power of the state to tax foreign corporations engaged exclusively in interstate commerce with the most minimal of connections to the taxing state.[4] Seemingly in response thereto,

---

4. As our Supreme Court stated in *Commonwealth v. Eastern Motor Express,* 398 Pa. 279, 295-96, 157 A. 2d 79, 88 (1959):

"As we understand the Northwestern Portland Cement Company opinion, it greatly expanded the prior interpretations of what are 'local activities' which are taxable by a State even though a part of interstate commerce. From 'the tangled underbrush of past [Supreme Court] cases' the broadened rule may, we believe, be thus stated: (1) A State cannot impose a tax on or for the privilege of engaging in interstate commerce; (2) A State can impose a property tax on the net income of a foreign corporation derived from property owned or used in the taxing State and/or from 'local activities,' broadly interpreted, even though the local activities are a part of interstate commerce, provided such net income is fairly and properly apportioned to the 'local activities,' and provided (a) the tax is not discriminatory against interstate commerce; and (b) the tax does not subject the interstate commerce to multiple State taxes; and (c) the tax does not constitute an undue burden on the interstate activities of the litigating taxpayer. Furthermore, it is valid and constitutional to measure such State tax by an apportioning formula provided the formula gives a fair and just and appropriate measurement of the net income derived from 'local activities'

Congress enacted Act of September 14, 1959, 15 U.S.C. §381 et seq., which, in general, prohibited a state from imposing a net income tax upon a corporation engaged in interstate commerce within the state, where that business activity resulted from *mere solicitation.*[5]

Therefore, upon review of the law of state taxation of foreign corporations, engaged in interstate commerce, it becomes clear that up to this point in time the pivotal question was whether there was a situation in which the missionary men of Appellant *merely* solicited business or, whether a *solicitation-plus* situation existed which would allow the Commonwealth to subject Appellant to taxation.

The Commonwealth, in defense of its imposition of tax, relies heavily on the most recent Supreme Court

---

and/or property in the taxing State: Northwestern State Portland Cement Company v. Minnesota and Williams v. Stockham Valves & Fittings, Inc., 358 U.S. supra; Butler Brothers v. McColgan, 315 U.S. 501; Turco Paint and Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37. See also Hans Rees' Sons v. North Carolina, 283 U.S. 123."

5. P.L. 86-272 found at 15 U.S.C. §381 states in relevant part:

"(a)   No States, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

"(1)   The solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2)   the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)."

pronouncement in the area in *Standard Press Steel Company v. State of Washington*, 419 U.S. 560 (1975), and *Colonial Pipeline Company v. Traigle*,    U.S.    , 95 S. Ct. 1538 (1975). It asserts that these cases held that almost anything beyond solicitation alone will establish a sufficient nexus to tax. In *Standard Press Steel*, the State of Washington attempted to tax the taxpayer under its business and occupation tax levied upon unapportioned gross receipts. The taxpayer employed one engineer whose office was in his home and *whose primary duty was to consult with the company's Washington customer, Boeing, concerning anticipated needs of that customer.* Further, he arranged for three of his firm's engineers to visit Boeing once every six weeks. No orders were taken by the employee and orders accepted would be filled, and shipment made by common carriers, seemingly meeting the criteria of 15 U.S.C. §381 et seq. All payments were made directly to the taxpayer's home office. The employee in Washington did maintain an answering service in State, but the bills for the service were sent to the home office. On these facts, the Supreme Court found the Washington tax *constitutional* as applied to *Standard Press Steel* and stated:

> "In other words, the question is 'whether the state has given anything for which it can ask in return,' . . . . We think the question in the present case verges on frivolous. For Appellant's employee, Martinson, with a full-time job within the state, *made possible the realization and continuance of valuable contractual relations between Appellant and Boeing.*" *Standard Press Steel, supra,* 419 U.S. at 562. (Citations omitted.) (Emphasis added.)

The instant case presents a factual posture whereby even accepting a view of the record most favorable to Appellant, *i.e.,* that its missionary men were merely present to promote company good will throughout the

territory,[6] it cannot be denied that *their presence made possible the realization and continuance of valuable contractual relations* and so there is established sufficient nexus for the imposition of the Corporation Income Tax pursuant to the standard enunciated in *Standard Press Steel*.

## II. *ADD BACK*

Turning to Appellant's claim that the add back was improper, we are compelled to say that our recent decision in *Triumph Hosiery Mills, Inc. v. Commonwealth of Pennsylvania*, 19 Pa. Commonwealth Ct. 186, 343

---

6. Appellant stresses the following points: Appellant maintained no manufacturing plants or inventory in this State during 1971. Appellant maintained no offices of any kind in Pennsylvania during 1971. The company had no bank accounts in Pennsylvania during 1971. Nor did the company maintain any corporate records in this State in 1971. Further, the company held no corporate meetings in Pennsylvania during 1971. The sole contact or connection of Appellant with Pennsylvania during 1971 was through its missionary representatives whose sole functions "are confined to solicitation of orders and functions incidental thereto". Those individuals employed by Appellant in Pennsylvania "do not have any authority to accept any orders, to adjust or settle any claims, collect accounts receivable or otherwise handle any money belonging or due the company. They have no agency powers and are not allowed to change any price list, circular or letter issued by the company. They are hired by, controlled from and paid from the Greenwich office and are subject to the direction of an administrative officer in the Greenwich, Connecticut office." The General Ledger, all billings and collections, inventory controls and sales controls are all handled from the Greenwich, Connecticut office. All orders are accepted or rejected at the Greenwich office. Orders accepted are completed on shipping orders from the Greenwich office to the nearest factory and shipped therefrom by common carriers direct to the purchasers. The large bulk of all orders for tobacco products is received directly at the Greenwich office from its direct customers without the intervention of any sales representatives or other employees of the company.

Missionary representatives of Appellant in Pennsylvania during 1971 had limited functions. As testified by Mr. George E.

A. 2d 710 (1975) may well be dispositive. In that case, President Judge BOWMAN, harmonizing Sections 401(3)1 and 401(3)2 of the Code, 72 P.S. §§ 7401(3)1, 7401(3)2, provisions of the Corporate Net Income Tax of Article IV of the Code, wrote:

> "Therefore, we adopt the Commonwealth's interpretation of sections 401(3)1 and 401(3)2. When computing its tax base for purposes of the Pennsylvania corporate net income tax, a corporation whose entire business is *not* transacted in Pennsylvania may apportion its taxable income except insofar as said

---

Stuart, an assistant division manager of Appellant, these persons generally visited retail outlets, introduced new products and set up counter displays as part of the solicitation of orders from retailers through local wholesalers.

Since there are only ten such representatives in Pennsylvania, the job involves substantial travel. Mr. Stuart at the evidentiary hearing detailed the extensive area covered by himself and indicated that a car is essential to the activities of Appellant's missionary representatives. Each missionary representative is therefore provided with a company-owned car. These vehicles, which are essential to the solicitation of orders by the missionary representatives constitute the only tangible property the taxpayer has in Pennsylvania.

The missionary representatives carry a limited supply of United States Tobacco Company products in their cars. These small quantities are purchased at cost by the missionary representatives from wholesalers. These products are in turn either sold to retailers at the wholesale price paid by the missionary representative or are given to the retailers "gratis."

These small quantities of United States Tobacco products are carried by the missionary representatives so that the missionary representatives have available fresh products to provide to retailers in introducing retailers to new items and to replace stale products on retailers' shelves. There is no profit or gain to Appellant as a result of the sale of these products since the items are sold at the acquisition cost paid by the representatives to wholesalers. These products are carried by the missionary representatives for purely promotional purposes and as an aid in the solicitation of orders for Appellant's products.

taxable income represents the 'add back' of that corporation's federal tax deduction for the Pennsylvania corporate net income tax." *Triumph Hosiery Mills, Inc. v. Commonwealth of Pennsylvania,* 21 Pa. Commonwealth Ct. at 190, 343 A. 2d at 713. (Emphasis added.)

Further, that opinion dealt with, and dismissed, the precise constitutional objections raised in the instant case. Therefore, the question for us to determine is whether the add back provision contained in the Corporate Net Income Tax, previously construed and validated by this Court, is either present in, or alluded to, in the Corporation Income Tax. If so, the rationale of *Triumph Hosiery Mills* is dispositive.

The Corporation Income Tax, here in issue, defines taxable income in Section 501(3) of the Code, 72 P.S. §7501(3) as follows:

"(3) 'Taxable income.'

"1. Taxable income shall be defined as set forth in *Article IV*.

"2. In the case of corporations owning property or carrying on activities within and without this Commonwealth, the taxable income of such corporations derived from sources within the Commonwealth for the fiscal or calendar year shall be determined by allocations and apportionments of taxable income *as set forth in Article IV*." (Emphasis added.)

As previously noted, Article IV is the Corporate Net Income Tax.[7] The Legislature was explicit in Article V in requiring taxable income to be computed *as if under Article IV,* thus necessitating the inclusion of the add back. Given this legislative pronouncement we can hold no other way but that *Triumph Hosiery Mills* controls.

---

7. Whereas Article V of the Code, the Corporation Income Tax is a *property tax*, Article IV, the Corporate Net Income Tax is an *excise tax* imposed on all corporations for *the privilege of doing business in* the Commonwealth.

Accordingly, we enter the following

## ORDER

AND NOW, this 5th day of December, 1975, unless exceptions are filed hereto within thirty (30) days, the Chief Clerk is hereby directed to enter judgment against United States Tobacco Company and in favor of the Commonwealth, in the amount of $70,878.52. The Chief Clerk is further directed to mark said judgment "satisfied" inasmuch as the full amount of said judgment has been paid by United States Tobacco Company.

---

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent.

The United States Tobacco Company is a New Jersey corporation engaged in the manufacture and sale of tobacco products. During the tax year here in question it maintained no manufacturing plants in Pennsylvania; it had no inventory of its products in this State; it maintained no offices in Pennsylvania; it had no bank accounts here; it maintained no corporate records here; and it held no corporate meetings in Pennsylvania.

The sole contact or connection of United States Tobacco Company with Pennsylvania was through so-called missionary representatives whose sole functions were to solicit orders. These individuals did not accept orders, adjust or settle claims or collect accounts. They were without agency powers and were not permitted to change any price list or other rule of their employer. They were hired by, controlled and paid from an out-of-state office.

The missionary representatives traveled about the State in company owned cars which constituted the only tangible property of the United States Tobacco Company located in Pennsylvania. The missionary representatives carried a limited supply of their employer's products purchased by them at cost from wholesalers which they either gave outright or sold to retailers at the wholesale

price. The purpose of carrying these small quantities of products was to provide them to retailers in introducing new items or replacing stale stock in trade. There was no profit realized on the disposition of these items and they were carried and used solely for promotional purposes and as aids in the solicitation of orders.

On exactly these facts the United States Tobacco Company was held not to be subject to the Pennsylvania corporation income tax in *Commonwealth v. United States Tobacco Company*, 70 Dauphin 217 (1957).

In *Northwestern States Portland Cement Company v. Minnesota*, 358 U.S. 450 (1959), the Supreme Court upheld the constitutionality of state income tax impositions with respect to taxpayers engaged exclusively in interstate commerce where the sole activity of the taxpayers other than the solicitation of orders was the maintenance of an office and equipment in the taxing states. As the majority herein notes, Congress, in response to the *Northwestern States* decision, enacted P.L. 86-272, 15 U.S.C.A. §381 et seq., denying states the power to impose taxes on the income of persons engaging in interstate commerce whose only business activity within the taxing state was that of the solicitation of orders. Since the activities of the United States Tobacco Company are limited to the activities of the company's missionary representatives, there seems to this writer to be no warrant for overruling *Commonwealth v. United States Tobacco Company, supra.*

The only authorities for so drastically changing the law advanced by the majority are *Standard Pressed Steel Company v. State of Washington*, 419 U.S. 560 (1975), and *Colonial Pipeline Company v. Traigle*, U.S. , 44 L.Ed.2d 1 (1975). Those cases are clearly distinguishable on the facts. Standard Pressed Steel Company was a manufacturer of metal fasteners with a home office in Pennsylvania and plants in Pennsylvania and California. Boeing Aircraft Company was a valued customer located in the State of Washington. Standard Pressed Steel had

one employe permanently located in Washington. He was an *engineer* who consulted with Boeing regarding its anticipated needs for his employer's products and followed up difficulties in use of its fasteners. Standard Pressed Steel about every six weeks sent a group of its engineers to visit Boeing and meet with the latter's people on engineering problems respecting the use of the fasteners. The Supreme Court concluded that the taxpayer's engineering activities within Washington were substantial and justified the tax imposed by that state. Neither Standard Pressed Steel's full time employe nor the visiting engineers were engaged in soliciting orders for sales, as was United States Tobacco Company's only activity here.

*Colonial Pipeline Company v. Traigle, supra,* is also clearly distinguishable. There the taxpayer was held to have submitted to the taxing power of Louisiana by having voluntarily qualified to do business there and by maintaining employes within that state to inspect and maintain a portion of its pipeline there located. Again, the taxpayer's employes were engaged in activities other than the mere solicitation of orders to be filled from the home office.

It is my belief that the majority's holding almost obliterates the immunity conferred by the Commerce Clause and that it fails to give effect to the will of Congress expressed by P.L. 86-276.

It is further clearly contrary to the time-honored principle that "where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller." *Norton Co. v. Department of Revenue,* 340 U.S. 534, 537 (1951).

I would sustain the appeal.

Judge BLATT joins in this dissent.